IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

ROBERT D. BAKER                                                                    PLAINTIFF

v.                                              CIVIL NO. 16-5272

NANCY A. BERRYHILL,[1] Commissioner
Social Security Administration                                                   DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Robert D. Baker, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for supplemental security income (SSI) benefits under the provision of Title XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

**I.     Procedural Background:**

Plaintiff protectively filed his current application for SSI on October 28, 2013, alleging an inability to work due to Type II diabetes, back pain, leg and feet pain, depression, shortness of breath, learning problems, sleep apnea, unspecified hyperlipidemia and an abnormal pulse. (Tr. 73, 166). An administrative video hearing was held on December 17, 2014, at which

---

[1] Nancy A. Berryhill, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

Plaintiff appeared with counsel and testified. (Tr. 31-71). Plaintiff's brother and a vocational expert also testified as this hearing.

By written decision dated April 15, 2015, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 14). Specifically, the ALJ found Plaintiff had the following severe impairments: obstructive sleep apnea (OSA), diabetes mellitus, lumbago, obesity, generalized anxiety disorder, major depressive disorder, an intellectual disability and a personality disorder. However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 14). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 416.967(b) except he cannot climb ropes or ladders, and he can occasionally climb ramps and stairs, balance, stoop, crouch, crawl and kneel. He must avoid hazards, including unprotected heights and moving machinery. He can read only very simple words. The claimant can perform simple, routine and repetitive tasks in a setting where interpersonal contact is incidental to the work performed. He can respond to supervision that is simple, direct and concrete.

(Tr. 17). With the help of a vocational expert, the ALJ determined Plaintiff could perform work as a silver wrapper; a cleaner, housekeeping; and a casing splitter. (Tr. 24, 282-291).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on August 2, 2016. (Tr. 1-6). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed appeal briefs, and the case is before the undersigned for report and recommendation. (Docs. 11, 12, 16, 17).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and are repeated here only to the extent necessary.

**II. Evidence Presented:**

At the administrative video hearing held on December 17, 2014, Plaintiff was fifty-two years of age and had obtained an eighth grade education that included special education courses. (Tr. 34, 37). Plaintiff's past relevant work consists of work as a construction worker. (Tr. 63).

Prior to the relevant time period, Plaintiff sought treatment for various medical conditions. The medical records for the time period in questions reflect the following. On November 5, 2013, Plaintiff underwent a polysomnography after being diagnosed with unspecified sleep apnea. (320-323, 392, 452-460). Plaintiff was diagnosed with sleep apnea and it was recommended that he follow-up in the sleep disorders center.

On November 7, 2013, Plaintiff was seen by Dr. Janelle Potts for a follow-up for his chronic medical problems which included diabetes, hyperlipidemia, degenerative disc disease and tobacco use. (Tr. 352-355, 398). Plaintiff reported that he was taking his medications as prescribed and was not experiencing side effects. Plaintiff reported he underwent a sleep study but did not have the results. Dr. Potts noted that there had been a great improvement in Plaintiff's A1C. Plaintiff denied experiencing fatigue, shortness of breath or polyuria but indicated that he did have back pain and arthralgias. Dr. Potts recommended Plaintiff continue with his medications and encouraged him to stop smoking.

On December 5, 2013, Dr. Clarence Ballard, a non-examining medical consultant, completed a RFC assessment stating that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds; could stand and/or walk for a total of about six hours in an eight-hour workday; could sit for a total of about six hours in an eight-hour

3

workday; could push or pull unlimited, other than as shown for lift and/or carry; and that postural, manipulative, visual, communicative or environmental limitations were not evident. (Tr. 79-81).

On December 19, 2013, Plaintiff had a follow-up appointment with Dr. Dimitry A. Fomin subsequent to his polysomnography. (Tr. 320-323, 356-359). Upon examination, Dr. Fomin noted Plaintiff's recent and remote memory were intact; his attention and concentration were normal; and his fund of knowledge was appropriate. Dr. Fomin noted Plaintiff displayed a full range of active motion and normal functional strength. Plaintiff ambulated with a normal gait and stance. Dr. Fomin discussed treatment options and that Plaintiff chose to try CPAP therapy.

On December 23, 2013, Plaintiff underwent a mental diagnostic evaluation performed by Dr. Terry L. Efird. (Tr. 325-329). Plaintiff reported that his lungs and back were "shot." Plaintiff reported that he did not care most of the time. Plaintiff also reported experiencing depression and excessive worry. Plaintiff reported that he lived with and took care of his elderly mother. Plaintiff reported difficulty getting into and out of the shower. Plaintiff indicated that he could perform household chores adequately. Dr. Efird noted that Plaintiff's fund of general information placed him in the borderline to low average range of intellectual functioning. With respect to adaptive functioning, Plaintiff endorsed the ability to shop independently, to handle personal finances with cash, and to perform most activities of daily living adequately. Dr. Efird opined that Plaintiff had the capacity to perform basic cognitive tasks required for basic work-like activities.

On December 31, 2013, Dr. Christal Janssen, a non-examining medical consultant, completed a Mental RFC Assessment opining that Plaintiff was moderately limited in some areas of functioning. (Tr. 81-83). On the same date, Dr. Janssen completed a Psychiatric Review Technique form opining that Plaintiff had mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence and pace; and no episodes of decompensation, each of an extended duration. (Tr. 78).

On January 7, 2014, Plaintiff underwent a full nighttime polysomnography. (Tr. 393, 461-469). Plaintiff was diagnosed with moderate obstructive sleep apnea that responded to CPAP therapy.

On February 7, 2014, Plaintiff had a follow-up appointment with Dr. Potts. (Tr. 401-404). Plaintiff reported that he was taking his medications as prescribed without side effects. Plaintiff indicated that he was watching his diet. Dr. Potts noted that Plaintiff's A1C was greatly improved. Plaintiff reported that his back pain was about the same. Upon examination, Dr. Potts noted Plaintiff was alert, oriented and in no acute distress. Plaintiff's lungs were clear to auscultation with no wheezes, rhonchi or crackles. Plaintiff had no edema in his extremities and he exhibited normal behavior, affect and mood. Dr. Potts noted Plaintiff's diabetes was greatly improved. It was recommended that Plaintiff continue to watch his diet and that he stop smoking.

On March 12, 2014, Dr. Steve Strode, a non-examining medical consultant, completed a RFC assessment stating that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds; could stand and/or walk for a total of about six hours in an

eight-hour workday; could sit for a total of about six hours in an eight-hour workday; could push or pull unlimited, other than as shown for lift and/or carry; could occasionally climb ramps/stairs, balance, stoop, kneel, and crouch, but never climb ladders/ropes/scaffolds or crawl; and that manipulative, visual, communicative limitations were not evident. (Tr. 95-97). Dr. Strode further opined that Plaintiff should avoid concentrated exposure to hazards.

On March 12, 2014, Dr. Susan Daugherty, a non-examining medical consultant, completed a Mental RFC Assessment opining that Plaintiff was moderately limited in some areas of functioning. (Tr. 98-100). On the same date, Dr. Daugherty completed a Psychiatric Review Technique form opining that Plaintiff had mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence and pace; and no episodes of decompensation, each of an extended duration. (Tr. 94).

On May 12, 2014, Plaintiff's Master Treatment Plan was reviewed. (Tr. 379-381). Plan notes indicated that Plaintiff was not being compliant with appointments and that is was possible Plaintiff came to Ozark Guidance to assist him in getting disability.

On May 15, 2014, Plaintiff underwent individual therapy with Audrey Adams, LCSW, at Ozark Guidance. (Tr. 372-373). Ms. Adams noted that Plaintiff was not ready to open up about his very painful losses. Plaintiff was noted to interact in therapy but if he became upset or tearful he would turn and stare out the window.

On May 29, 2014, Plaintiff underwent individual therapy with Ms. Adams. (Tr. 374-375). Ms. Adams noted the last session was most productive as Plaintiff finally opened up and was more responsive. Ms. Adams also completed a mental residual functional capacity form

6

opining that Plaintiff had no useful ability to function on a sustained basis in multiple areas of functioning. (Tr. 363).

On July 29, 2014, Plaintiff's Master Therapy Plan was updated. (Tr. 376-378). Plan notes indicated that Plaintiff had not been keeping his therapy appointments and per last session had not made any progress.

On August 24, 2014, Plaintiff was discharged from Ozark Guidance. (Tr. 382-383). When Plaintiff was called by the clinic, he informed the clinician that he was unable to afford treatment.

On October 21, 2014, Plaintiff reported he had been experiencing foot and leg pain for the past three months. (Tr. 405-407). Dr. Potts noted Plaintiff also reported numbness and burning. It was noted that Plaintiff was overdue for labs and that he had "mostly" been taking his medications as prescribed. Plaintiff reported that he continued to smoke. Plaintiff was counseled on lifestyle modifications including weight loss and daily exercise. It was also recommended that Plaintiff stop smoking.

On November 21, 2014, Plaintiff was seen by Dr. Potts for a follow-up on his chronic medical problems including diabetes mellitus, hyperlipidemia, sleep apnea and back pain. (Tr. 408-410). Plaintiff reported he was taking his medications as prescribed without experiencing side effects. Dr. Potts noted that Plaintiff's sugars were not controlled but Plaintiff did not want to start insulin and agreed to watch his diet. Plaintiff reported experiencing some depression. Plaintiff was counseled on watching his diet and exercising daily. Plaintiff was also started on an antidepressant.

### III. Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. § 423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

8

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. § 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982), abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. § 416.920.

**IV.  Discussion:**

Plaintiff argues the following issues on appeal: 1) the ALJ erred in failing to fully and fairly develop the record; 2) the ALJ erred by not finding Plaintiff's peripheral neuropathy and cervical conditions to be severe impairments; 3) the ALJ erred in assessing the credibility of Plaintiff's subjective complaints; 4) the ALJ erred in determining Plaintiff's RFC; 5) the ALJ erred in his rehabilitation of the first vocational expert by post-hearing calling a second vocational expert creating fundamental unfairness in the process; and 6) the ALJ erred in determining Plaintiff could perform work at Step Five.

### A. Full and Fair Development of the Record:

The ALJ has a duty to fully and fairly develop the record. See Frankl v. Shalala, 47 F.3d 935, 938 (8th Cir.1995). The ALJ's duty to fully and fairly develop the record is independent of Plaintiff's burden to press his case. Vossen v. Astrue, 612 F.3d 1011, 1016 (8th

Cir. 2010). The ALJ, however, is not required to function as Plaintiff's substitute counsel, but only to develop a reasonably complete record. "Reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial." Shannon v. Chater, 54 F.3d 484, 488 (8th Cir. 1995). "While an ALJ does have a duty to develop the record, this duty is not never-ending and an ALJ is not required to disprove every possible impairment." McCoy v. Astrue, 648 F.3d 605, 612 (8th Cir. 2011).

In this case, the record consists of Plaintiff's medical records, consultative physical and mental evaluations, and the opinions of four non-examining medical consultants. While Plaintiff argues that his alleged illiteracy should have been further developed, the record revealed that Plaintiff completed the eighth grade in formal education, only being in special educations classes the latter two years. Plaintiff also reported that he could "read enough to get by." (Tr. 315). After reviewing the entire record, the Court finds the record before the ALJ contained the evidence required to make a full and informed decision regarding Plaintiff's capabilities during the relevant time period. Accordingly, the undersigned finds the ALJ fully and fairly developed the record.

### B. Severe Impairments:

Plaintiff argues that remand is necessary because the ALJ failed to find his alleged diabetic peripheral neuropathy and cervical neck pain to be severe impairments.

At Step Two of the sequential analysis, the ALJ is required to determine whether a claimant's impairments are severe. See 20 C .F.R. § 404.1520(c). While "severity is not an onerous requirement for the claimant to meet…it is also not a toothless standard." Wright v. Colvin, 789 F.3d 847, 855 (8th Cir. 2015) (citations omitted). To be severe, an impairment only needs to have more than a minimal impact on a claimant's ability to perform work-related

activities. See Social Security Ruling 96-3p. The claimant has the burden of proof of showing he suffers from a medically severe impairment at Step Two. See Mittlestedt v. Apfel, 204 F.3d 847, 852 (8th Cir.2000).

While the ALJ did not find all of Plaintiff's alleged impairments to be severe impairments during the time period in question, the ALJ stated that he considered all of Plaintiff's impairments, including the impairments that were found to be non-severe. See Swartz v. Barnhart, 188 F. App'x 361, 368 (6th Cir. 2006) (where ALJ finds at least one "severe" impairment and proceeds to assess claimant's RFC based on all alleged impairments, any error in failing to identify particular impairment as "severe" at step two is harmless); Elmore v. Astrue, 2012 WL 1085487 *12 (E.D. Mo. March 5, 2012); see also 20 C.F.R. § 416.945(a)(2) (in assessing RFC, ALJ must consider "all of [a claimant's] medically determinable impairments ..., including ... impairments that are not 'severe' "); § 416.923 (ALJ must "consider the combined effect of all [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity"). After reviewing the record, the Court finds the ALJ did not commit reversible error in setting forth Plaintiff's severe impairments during the relevant time period.

### C. Subjective Complaint and Symptom Evaluation:

We now address the ALJ's assessment of Plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a

claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly considered and evaluated Plaintiff's subjective complaints, including the Polaski factors. A review of the record reveals that Plaintiff reported he was able to help take care of his elderly mother. In December of 2013, Plaintiff reported to Dr. Efird that he was able to perform household chores adequately; to shop independently; to handle finances adequately with cash; and to perform activities of daily living adequately. Dr. Efird noted that Plaintiff did report that he showered only twice a month due to problems getting into and out of the shower. On the day of the evaluation with Dr. Efird, Plaintiff was noted as being appropriately dressed and groomed.

With regard to Plaintiff's alleged lumbago and pain, the ALJ found that while Plaintiff may indeed have some limitations, the evidence did not support a finding of disability. A review of the evidence reveals that Plaintiff's pain responded well to medication. Brace v. Astrue, 578 F.3d 882, 885 (8th Cir. 2009) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling.")(citations omitted). Thus, while Plaintiff may indeed experience some degree of pain due to his lumbago and pain, the Court finds substantial evidence of record supporting the ALJ's finding that Plaintiff does not have a disabling impairment. See Lawrence v. Chater, 107 F.3d 674, 676 (8th Cir. 1997) (upholding ALJ's determination that claimant was not disabled even though she had in fact sustained a back injury and suffered some degree of pain).

Regarding Plaintiff's mental functioning, the record showed Plaintiff sought very little treatment for these alleged impairments. See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability). Based on the record as a whole, the Court finds substantial evidence to support the ALJ's determination that Plaintiff does not have a disabling mental impairment.

The Court would note that while Plaintiff alleged an inability to seek treatment due to a lack of finances, the record is void of any indication that Plaintiff had been denied treatment due to the lack of funds. Murphy v. Sullivan, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). The record revealed that on August 24, 2014, Plaintiff was called by Ozark Guidance prior to being discharged and Plaintiff told the clinician that he could not afford treatment. However, there is no indication that Ozark Guidance refused to treat Plaintiff due to lack of payment. It is also noteworthy, that Plaintiff was able to come up with the funds to purchase cigarettes throughout the relevant time period.

With regard to the testimony of Plaintiff's brother, the ALJ properly considered this evidence but found it unpersuasive. This determination was within the ALJ's province. See Siemers v. Shalala, 47 F.3d 299, 302 (8th Cir. 1995); Ownbey v. Shalala, 5 F.3d 342, 345 (8th Cir. 1993).

Therefore, although it is clear that Plaintiff suffers with some degree of limitation, he has not established that he is unable to engage in any gainful activity. Accordingly, the Court

concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

### D. ALJ's RFC Determination and Medical Opinions:

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

When determining the RFC, a treating physician's opinion is given more weight than other sources in a disability proceeding. 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is supported by proper medical testing, and is not inconsistent with other substantial evidence in the record, the ALJ must give the opinion controlling weight. Id. "However, [a]n ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010) (alteration in original)

14

(internal quotation omitted). Ultimately, the ALJ must "give good reasons" to explain the weight given the treating physician's opinion. 20 C.F.R. § 404.1527(c)(2).

In the present case, the ALJ considered the medical assessments of examining and non-examining agency medical consultants, Plaintiff's subjective complaints, and his medical records when he determined Plaintiff could perform light work with limitations. The Court notes that in determining Plaintiff's RFC, the ALJ discussed the medical opinions of treating, examining and non-examining medical professionals, and set forth the reasons for the weight given to the opinions. Renstrom v. Astrue, 680 F.3d 1057, 1065 (8th Cir. 2012) ("It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians")(citations omitted); Prosch v. Apfel, 201 F.3d 1010 at 1012 (the ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole).

In determining Plaintiff's RFC, the ALJ gave little weight to the May 29, 2014, mental residual functional capacity assessment completed by Ms. Adams, opining that Plaintiff had no useful ability to function on a sustained basis in many areas of functioning. After review, the Court finds that the ALJ did not err in discounting the opinion of Ms. Adams. The ALJ declined to give controlling weight to the opinion for good and well-supported reasons. See Goff v. Barnhart, 421 F.3d 785, 790–91 (8th Cir. 2005) ("[A]n appropriate finding of inconsistency with other evidence alone is sufficient to discount [the treating physician's] opinion."). The ALJ also took Plaintiff's obesity into account when determining Plaintiff's RFC. Heino v. Astrue, 578 F.3d 873, 881-882 (8th Cir. 2009) (when an ALJ references the claimant's obesity during the claim evaluation process, such review may be sufficient to avoid

reversal). Based on the record as a whole, the Court finds substantial evidence to support the ALJ's RFC determination.

### E. Hypothetical Question to the Vocational Expert:

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole. Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). The Court also finds the ALJ did not err in directing interrogatories to a second vocational expert and not to the vocational expert that testified at the administrative hearing.[2] Accordingly, the Court finds that the vocational expert's opinion constitutes substantial evidence supporting the ALJ's conclusion that Plaintiff's impairments did not preclude him from performing work as a silver wrapper, a cleaner, housekeeping, and a casing splitter. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996) (testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

## V. Conclusion:

Based on the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice. **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal**

---

[2] Plaintiff was given the opportunity to review the interrogatories and to submit written comments or request a hearing. (Tr. 292). Plaintiff chose to submit a written comment objecting to the use of a second vocational expert. (Tr. 295-300).

**questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 9th day of November 2017.

       /s/ *Erin L. Wiedemann*
      HON. ERIN L. WIEDEMANN
      UNITED STATES MAGISTRATE JUDGE